[No. C018599. Third Dist. June 30, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH LEE SIPE, Defendant and Appellant.

474

COUNSEL

Mark E. Cutler and Madeline McDowell, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Garnand Venturi, Judy Kaida and Janett H. Shaw, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MORRISON, J.—This case arises under the so-called "three strikes" legislation (Pen. Code, § 667, subds. (b)-(i); Stats. 1994, ch. 12, §§ 1-2). In late 1993 defendant entered a plea of guilty to one count of residential burglary (Pen. Code, § 459; all further statutory references are to the Penal Code unless otherwise specified), a serious felony under section 1192.7, subdivision (c)(18). He was granted probation, with time in jail. Less than one month after the Legislature enacted the "three strikes" law, defendant walked away from an honor farm where he was serving his time. He was originally charged only with escape while charged with a felony (§ 4532, subd. (b)), but the complaint was amended to allege a prior felony conviction under new section 667, subdivision (d), enacted in 1994 and effective March 7, 1994, as an urgency measure. (Stats. 1994, ch. 12, § 2.) Defendant

pleaded guilty to escape and admitted the prior conviction. He was sentenced under section 667, subdivision (e)(1) to twice the midterm or four years in prison. Defendant obtained a certificate of probable cause and appeals. We affirm.

We reject defendant's various challenges to the "three strikes" law. We find the law permits the use of pre-March 7, 1994 convictions as "strikes." Defendant fails to show the law is unconstitutionally vague on its face and it is not vague as applied to him. The "three strikes" law does not violate due process as it bears a rational relationship to a legitimate state interest. We find no equal protection violation in the reduction of credits he may receive against his sentence. We reject defendant's various arguments that using his prior conviction both to establish felony escape and as a "strike" is a prohibited dual use of facts. And we find no error in permitting the complaint to be amended.

## DISCUSSION

### I. Use of Pre-March 1994 Prior Convictions

We begin with defendant's attack on the "three strikes" law. The Legislature amended section 667 to add subdivisions (b) through (i) in March 1994 as an urgency measure. (Stats. 1994, ch. 12, §§ 1-2.) The Legislature stated the purpose of the new law as follows: "It is the intent of the Legislature in enacting subdivisions (b) to (i), inclusive, to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (§ 667, subd. (b).) The following November, the voters passed a "three strikes" initiative measure (Prop. 184) that added section 1170.12 to the Penal Code. This section is substantially similar to subdivisions (c) through (g) of section 667. Since defendant committed his offense in April 1994, this case arises under section 667.

Subdivision (e) of section 667 provides an alternate sentencing scheme for felons who have previously been convicted of certain felonies or "strikes." Subdivision (d) defines a prior conviction of a felony or "strike" to include:

"Any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state. *The determination of whether a prior conviction is a prior felony conviction for purposes of subdivisions (b) to (i), inclusive, shall be made upon the date of that prior conviction* and is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor. None of the following dispositions shall affect the determination that a prior conviction is a prior felony for purposes of subdivisions (b) to (i), inclusive:

"(A) The suspension of imposition of judgment or sentence.

"(B) The stay of execution of sentence.

"(C) The commitment to the State Department of Health Services as a mentally disordered sex offender following a conviction of a felony.

"(D) The commitment to the California Rehabilitation Center or other facility whose function is rehabilitative diversion from the state prison." (§ 667, subd. (d)(1), italics added.)

■ Defendant focuses on the emphasized language and argues only felony convictions incurred after March 7, 1994, the effective date of the "three strikes" legislation, can be considered "strikes." He contends his 1993 burglary conviction cannot be used as a "strike." Defendant reasons that the determination of whether a prior conviction is a prior felony conviction or "strike" for purposes of the statute can only be made after the statute was in existence. Since the determination is made *"upon the date"* of the prior conviction, only convictions after March 7, 1994, can be determined to be "strikes."

In interpreting the statute we are guided by well-settled principles. "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law." (*People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) We begin with the language of the statute. (*Ibid.*) "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Here, the Legislature clearly expressed its intent to provide longer sentences for felons who "have been previously convicted of serious and/or violent felony offenses." (§ 667, subd. (b).) Because of the need to protect the public from the "imminent threat" posed by recidivist felony offenders, the act was declared an urgency measure to take effect immediately. (Stats. 1994, ch. 12, § 2.) Nothing in the statute indicates an intent to limit its effect to only those who commit multiple felonies in the future. Indeed, "[t]he basic purpose of the section—deterrence of recidivism—would be frustrated by a construction which did not take account of prior criminal conduct."

(*People* v. *Jackson* (1985) 37 Cal.3d 826, 833 [210 Cal.Rptr. 623, 694 P.2d 736] [interpreting prior § 667].)

In reading the statute to permit the use of prior convictions only from the statute's effective date, defendant ignores a basic premise of statutory construction. In focusing solely on the requirement that the determination be made "upon the date of that prior conviction," he takes this language out of context and, indeed, ignores the rest of the sentence. In construing a statute, the words must be read in context. (*Lungren* v. *Deukmejian, supra,* 45 Cal.3d at p. 735.) The balance of the sentence provides the sentence imposed shall not affect the determination, unless "the sentence automatically, upon initial sentencing, converts the felony to a misdemeanor." (§ 667, subd. (d)(1).) The statute then sets forth various dispositions that will not affect the felony/misdemeanor determination. Read in context, the "determination" at issue must be whether the prior conviction "is a prior *felony* conviction" rather than a conviction for a misdemeanor. This determination is made "upon the date" of the conviction, so subsequent events, such as a reduction to a misdemeanor (§ 17, subd. (b)(3)), will not affect its classification as a felony conviction.

This reading permits pre-March 7, 1994 convictions to be used as "strikes," thus implementing the express legislative intent to provide more severe punishment for recidivist felons immediately. It also results in "a reasonable and commonsense interpretation consistent with the apparent legislative purpose and intent, practical rather than technical in character and upon application resultant of wise policy rather than absurdity." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1406 [241 Cal.Rptr. 67, 743 P.2d 1323].) It is "reasonable and commonsense" to provide a reference point (the date of conviction) for determining whether a conviction is for a felony or a misdemeanor. There is no reason, however, to require a court to determine whether a conviction may serve as a "strike" unless and until the defendant commits another felony.

Since we have found the language of the statute defeats defendant's interpretation, we need not employ the various tools of statutory construction suggested by defendant to reach his interpretation.

■ Defendant argues using pre-March 7, 1994, prior convictions will result in retroactive application of the law. He provides several reasons why the statute should not be given retroactive application. We disagree with his premise that using convictions prior to enactment of the "three strikes" law results in a retroactive application. "A statute is not retroactive in operation merely because it draws upon facts antecedent to its enactment for its

operation." (*People* v. *Venegas* (1970) 10 Cal.App.3d 814, 823 [89 Cal.Rptr. 103].) "In the context of habitual criminal statutes, 'increased penalties for subsequent offenses are attributable to the defendant's status as a repeat offender and arise as an incident of the subsequent offense rather than constituting a penalty for the prior offense.' [Citation.]" (*People* v. *Jackson*, *supra*, 37 Cal.3d 826, 833.)

Finally, defendant seeks support in the rule that a statute should be interpreted so as to eliminate doubts as to its constitutionality. (*In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142].) He argues that using pre-March 7, 1994, prior convictions as "strikes" may pose a constitutional problem. Before March 7, 1994, no sentencing judge knew a felony conviction might be used in the future as a "strike," so no judge advised a defendant pleading guilty to a serious or violent felony of that consequence.

Future use of a current conviction is not a direct consequence of that conviction, so no such advisement is necessary. (*People* v. *Bernal* (1994) 22 Cal.App.4th 1455, 1457 [27 Cal.Rptr.2d 839].) Defendant contends this rule does not apply to the "three strikes" law because section 667 requires the determination of whether a prior conviction is a "strike" to be made upon the date of the prior conviction. He reads this to require the sentencing judge both to make the determination and to advise the defendant that he will be subject to increased punishment if he commits another felony. As discussed above, we disagree with defendant's characterization of the determination at issue. It is simply whether the prior conviction was for a felony or a misdemeanor. The prior conviction does not have effect as a "strike" unless and until the defendant commits a new felony. This future use of the conviction is not a direct consequence requiring advisement. (22 Cal.App.4th 1457.)

In connection with the interpretation of subdivision (d)(1) of section 667, defendant requests we take judicial notice of the Senate analysis. The Attorney General requests we take judicial notice of the analysis of Proposition 184 by the legislative analyst. Since we have found the statute can be interpreted without the aid of extrinsic sources, we deny both requests.[1]

## II. *Vagueness*

■ Defendant contends the statute is unconstitutionally vague. He points out numerous alleged ambiguities, including whether pre-March 7, 1994, prior felony convictions may be used as "strikes;" the definition of

---

[1]Furthermore, we deny the parties' other requests that we take judicial notice of materials attached to their briefs or submitted separately after briefing was complete.

"term" in subdivision (e); whether two serious or violent felonies in a single accusatory pleading will constitute two "strikes"; whether a first offender who commits three serious or violent felonies may receive a life sentence; whether a "strike" must be pled and proved at the preliminary hearing; whether a juvenile adjudication may be used as a "strike" when the juvenile did not receive a jury trial; whether the reduction in credits poses an equal protection problem; and whether a trial court has the power to dismiss a "strike" in the furtherance of justice.

■ "The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well established element of the guarantee of due process of law." (*In re Newbern* (1960) 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116].) Due process requires the state to give its citizens fair notice of potentially criminal conduct. (*Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 141 [253 Cal.Rptr. 1, 763 P.2d 852].) This due process requirement of fair notice has two components. The statute must be definite enough to provide both (1) a standard of conduct for those whose conduct is proscribed and (2) a standard for police enforcement and the ascertainment of guilt. (*Ibid.*)

The vagueness doctrine may also apply to sentencing statutes. "[V]ague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute. [Citations.]" (*United States* v. *Batchelder* (1979) 442 U.S. 114, 123 [60 L.Ed.2d 755, 764, 99 S.Ct. 2198].) For example, in *United States* v. *Evans* (1948) 333 U.S. 483 [92 L.Ed. 823, 68 S.Ct. 634], the United States Supreme Court affirmed the dismissal of an indictment for violation of the Immigration Act for concealing and harboring illegal aliens due to the vagueness of the penalty. The court found the statute so vague as to the penalty that the court could not determine the penalty without crossing the line between "the necessary and proper judicial function of construing statutes and that of filling gaps so large that doing so becomes essentially legislative, . . ." (*Id.* at pp. 486-487 [92 L.Ed. at p. 826].)

■ Defendant contends the "three strikes" law is unconstitutionally vague because no one knows what it means or how to implement it uniformly. He contends the statute's vagueness will preclude effective assistance of counsel. A defendant will be unable to rely on the advice of his attorney, because the attorney will only be guessing as to the application of the law and the defendant's actual sentence. He supports this argument only with a catalog of issues to which he claims the statute provides no clear answer. This shotgun approach is the sort of constitutional challenge rejected in *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188 [246 Cal.Rptr. 629,

753 P.2d 585]. In *Evangelatos*, the plaintiff challenged Proposition 51, posing numerous unanswered questions to the proposition's application. The high court responded: "Many, probably most, statutes are ambiguous in some respects and instances invariably arise under which the application of the statutory language may be unclear. So long as a statute does not threaten to infringe on the exercise of First Amendment or other constitutional rights, however, such ambiguities, even if numerous, do not justify the invalidation of a statute on its face. In order to succeed on a facial vagueness challenge to a legislative measure that does not threaten constitutionally protected conduct . . . a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that 'the law is impermissibly vague *in all of its applications.*' [Citation.]" (*Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at p. 1201.)

To mount a successful challenge of facial constitutionality, defendant must show the statute poses a present and fatal conflict with constitutional principles. (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180-181 [172 Cal.Rptr. 487, 624 P.2d 1215].) He cannot prevail by simply suggesting hypothetical situations in which constitutional problems may arise. (*Ibid.*) Since defendant's argument is based solely on such hypothetical situations, he fails to invalidate the statute as a whole.

The many questions that defendant raises which have no application to him we leave to be resolved in the proper cases. "[W]hen situations in which the statutory language is ambiguous arise, the statute's application can be resolved by trial and appellate courts 'in time-honored, case-by-case fashion,' by reference to the language and purposes of the statutory schemes as a whole." (*Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at p. 1202.) Moreover, as to these issues, defendant merely raises the point without argument or citation of authority. For this additional reason, we decline to address these issues. (*People* v. *Hardy* (1992) 2 Cal.4th 86, 150 [5 Cal.Rptr.2d 796, 825 P.2d 781]; *People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 995-996 [262 Cal.Rptr. 141].)

We next determine the more narrow question of whether the statute is unconstitutionally vague as applied to defendant. (*People* v. *Serrata* (1976) 62 Cal.App.3d 9, 22 [133 Cal.Rptr. 144, 84 A.L.R.3d 952].) Only three of the "problems" defendant identifies arise in his case. The first is the use of pre-March 7, 1994, felony convictions, which we have resolved in part I, *ante.* We address the equal protection challenge to his sentencing credits in part IV, *post.* The remaining issue is the definition of "term" in section 667, subdivision (e)(1).

Subdivision (e)(1) of section 667 provides: "For purposes of subdivisions (b) to (i), inclusive, and in addition to any other enhancement or punishment

provisions which may apply, the following shall apply where a defendant has a prior felony conviction:

"(1) If a defendant has one prior felony conviction that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction."

Defendant contends "twice the term otherwise provided as punishment" is vague. He posits several scenarios which result in different sentences depending upon how the "term" is defined; that is, whether the "term" is only the base term, or also includes enhancements. While there will be cases which pose questions as to the precise meaning of "term," this is not one of them. Defendant was not charged with any enhancements, so as to him "term" can only mean base term. It was understood by all that his "term" under section 667, subdivision (e)(1) would be twice the middle term for escape. His counsel had no difficulty in accurately advising defendant of the effect of the new law. At his arraignment on the amended complaint, his counsel stated: "He's going to enter a new and different plea of guilty. [¶] It's his understanding if he does so, he's going to receive twice the middle term in state prison." Defendant has not shown any ambiguity or vagueness as to the sentence he would receive, nor that any vagueness resulted in ineffective assistance of counsel.

### III. *Rational Relationship to Legitimate State Interest*

 Defendant contends the "three strikes" law violates due process because it does not bear a rational relationship to a legitimate state interest.

 "In the exercise of its police power a Legislature does not violate due process so long as an enactment is procedurally fair and reasonably related to a proper legislative goal. The wisdom of the legislation is not at issue in analyzing its constitutionality, and neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate a statute. [Citations.]" (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512].)

 Defendant's attack upon the "three strikes" law, although phrased as a due process challenge, essentially questions the wisdom of the law. In arguing the law is irrational, defendant cites its severe punishment for nonviolent offenders, its potential triple life sentences, and its high cost. "It is not the function of the courts to decide whether the Legislature properly weighed the evidence offered by proponents and opponents of a law, or

whether it selected the 'correct' remedy for a given problem." (*Buhl* v. *Hannigan* (1993) 16 Cal.App.4th 1612, 1621 [20 Cal.Rptr.2d 740].) Whether the law is "wise" is a matter of public policy for the Legislature, not the courts. (*Ibid.*) Habitual criminal statutes have long been considered a rational response to the problem of recidivist crime. (See *In re Rosencrantz* (1928) 205 Cal. 534 [271 P. 902] [upholding life imprisonment without possibility of parole for fourth felony conviction for passing bad checks].) The "three strikes" law is "reasonably related to a proper legislative goal" of curbing recidivist criminal activity. As such, it does not violate due process. (*Hale* v. *Morgan, supra,* 22 Cal.3d at p. 398.)

## IV. *Equal Protection*

Subdivision (c)(5) of section 667 provides: "The total amount of credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall not exceed one-fifth of the total term of imprisonment imposed and shall not accrue until the defendant is physically placed in the state prison." Thus, defendant may receive only one-fifth, or two hundred ninety two days, of credit against his four-year sentence.

Defendant contends this result denies him equal protection because he receives less credit than a recidivist murderer. In *In re Diaz* (1993) 13 Cal.App.4th 1755 [17 Cal.Rptr.2d 395], the court held a murderer with prior serious felony convictions must be sentenced under section 190 rather than section 667.7. The court faced the question whether murderers with serious prior convictions could receive one-for-one work time credits under section 2933, credits which were denied to first time offender murderers under section 190. If so, murderers with serious priors would receive more credits than first time offender murders, truly an irrational and anomalous result. The court resolved the problem by finding all murderers were to be sentenced under section 190 and none received section 2933 credits. (13 Cal.App.4th at pp. 1759-1762.) Section 190 was part of the Briggs Initiative, so its provisions could not be modified by subsequent legislative enactments. (13 Cal.App.4th at p. 1760; see Cal. Const., art. II, § 10, subd. (c).)

Defendant argues the same reasoning that an initiative cannot be modified by the Legislature applies here. Murderers with prior serious or violent felony convictions will continue to be sentenced under section 190. They will be eligible for a one-third sentence reduction for credits under section 2931, subdivisions (a), (b), and (c). (§ 2933, subd. (e).) Defendant contends this results in an equal protection violation because there is no rational reason for treating habitual criminals who commit murder more leniently than those who commit less serious crimes, such as escape.

Defendant's contention has no merit. First, the premise underlying his argument that all murders must be sentenced under section 190 is now doubtful, since the California Supreme Court has recently disapproved *In re Diaz, supra*, 13 Cal.App.4th 1755. (*People* v. *Jenkins* (1995) 10 Cal.4th 234, 248, and fn. 8 [40 Cal.Rptr.2d 903, 893 P.2d 1224].) Second, defendant has failed to make the proper showing for a successful equal protection claim.

"The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], original italics.) Defendant, who was sentenced to a four-year determinate sentence, is not similarly situated with murderers who receive an indeterminate life sentence. Any credits defendant receives will reduce his sentence and move up the date he is released. The same is not necessarily true of a murderer. Any credits the murderer receives will be applied against his minimum parole eligibility date. (§ 190.) They will not necessarily result in an earlier release date. That date is set independently by the Board of Prison Terms. (§ 3041.) Defendant cannot show a murderer with a prior conviction for a violent or serious felony will receive a greater reduction in his actual sentence. Accordingly, he cannot show an equal protection violation.

## V. *Dual Use of Prior Conviction*

■ Defendant contends the use of the same prior conviction both to convict him of felony escape and to increase his sentence constitutes a prohibited dual use of facts. He advances several theories to support this contention. Because defendant's argument is based on the erroneous premise that his prior conviction is used to enhance his sentence, it must fail.

Before we address defendant's various arguments, we first determine what "use" is made of defendant's prior conviction. Defendant suggests his prior conviction may be either an element or a sentence-enhancing factor under section 4532, subdivision (b). In *People* v. *Bouzas* (1991) 53 Cal.3d 467, 479, [279 Cal.Rptr. 847, 807 P.2d 1076] the court determined that section 666 (petty theft with a prior theft-related conviction) was a sentence-enhancing statute, not a substantive offense statute. The effect of the prior conviction was to enhance the punishment over what would apply to a first time petty theft conviction. (*Id.* at pp. 478-479.) By contrast, the prior conviction makes up an element of the two-component crime in section 12021 (felon in possession of a firearm). (*People* v. *Hilliard* (1963) 221 Cal.App.2d 719, 724 [34 Cal.Rptr. 809] ["The elements of the offense here involved are (1) conviction of a felony and (2) ownership or possession of a firearm . . . ."].)

The use of the prior conviction for escape is analogous to that of section 12021. Section 4532 defines two offenses, both of which are felonies.[2] The first is escape after one is arrested and booked for, charged with, or convicted of a misdemeanor. The penalty is state prison for one year and one day or up to one year in jail. (§ 4532, subd. (a).) Where the underlying offense is a felony, escape is more severely punished by sixteen months, two or three years in prison or up to one year in jail. (§ 4532, subd. (b).) (There is more severe punishment if either type of escape is by force or violence.) Unlike section 666, the existence of a prior conviction does not enhance the crime of escape from a misdemeanor to a felony or a wobbler to punish the defendant's recidivism. Rather, defendant's status is an element of the crime. The prior offense is necessary to establish a basis for custody. Without custody, there is no crime of escape. A defendant need not have a prior conviction; he need only be in custody, which can be the result of an arrest and a booking, a charge or a conviction. Thus, defendant's prior conviction does not "enhance" his escape offense; it is simply one way to establish the basis for the element of custody.

Nor does defendant's prior conviction serve as an enhancement under section 667, subdivision (e). An enhancement is an additional term of imprisonment added to the base term. (*People* v. *Hernandez* (1988) 46 Cal.3d 194, 207 [249 Cal.Rptr. 850, 757 P.2d 1013]; rule 405(c), Cal. Rules of Court.) Nothing in section 667, subdivision (e) provides for an added term. In *People* v. *Martin* (1995) 32 Cal.App.4th 656 [38 Cal.Rptr.2d 776], the court considered whether doubling the subordinate term for a second petty theft with a prior offense would be an enhancement. The court found section 667, subdivision (e) was not an enhancement, but instead defined the term for the crime itself. (32 Cal.App.4th at p. 667.) We agree; section 667, subdivision (e) provides an alternate sentencing scheme where the felon has a prior serious and/or violent felony.

Defendant argues section 667, subdivision (e) is an enhancement under the criteria of *People* v. *Rayford* (1994) 9 Cal.4th 1 [36 Cal.Rptr.2d 317, 884 P.2d 1369]. In *Rayford*, the court determined section 208, subdivision (d), which provides a greater sentence for kidnapping with the intent to commit rape, was a substantive offense, not an enhancement. (9 Cal.4th at p. 11.) The court noted that the Legislature now often provides a range of terms for enhancements, so such provision is no longer dispositive that the statute defined a separate crime. (*Id.* at p. 9.) The language of the statute determines whether it is a substantive offense or an enhancement. Enhancements often use the language "an additional term" and "enhancement." (*Ibid.*)

---

[2] Both escape offenses may be punished by a sentence of imprisonment in county jail. If the court imposed such a sentence, either offense would become a misdemeanor. (§ 17, subd. (b)(1).)

Defendant first notes the title to section 667 includes the term "enhancement," but subdivision (a) of this section is an enhancement, so this title is not dispositive. Defendant next points to the language "in addition to any other enhancement or punishment provisions which may apply" to argue section 667, subdivision (e) is an enhancement. He argues this language is similar to "an additional term" and thus indicates subdivision (e) is an enhancement. While the language is inartful, we construe it simply to permit the addition of enhancements to the term provided under subdivision (e). Subdivision (e) does not add a term to defendant's sentence. Instead, it provides an alternate method to calculate either the determinate term or minimum term for an indeterminate sentence. It is an alternate sentencing scheme, not an enhancement.

In this regard, section 667, subdivision (e) is analogous to section 667.51, subdivision (d) and section 667.7. Section 667.51 prescribes the punishment for persons convicted of lewd acts upon children when such persons have similar previous convictions. Subdivision (a) imposes a five-year enhancement for a prior conviction of certain sex offenses. Subdivision (d) provides for a life sentence for a violation of section 288 by one with two or more prior sex offense convictions. The former is an enhancement; the latter is not. (*People* v. *Decker* (1988) 199 Cal.App.3d 694, 697 [245 Cal.Rptr. 40] [construing former subdivision (c), now subdivision (d)]; see also *People* v. *Webb* (1992) 7 Cal.App.4th 575, 579-580 [8 Cal.Rptr.2d 904].)

Section 667.7 provides a separate term of imprisonment for recidivist conduct. It imposes a life sentence for certain offenses where the defendant has two or more prior convictions for such offenses. Like subdivision (d) of section 667.51, it is not an enhancement. (*People* v. *Skeirik* (1991) 229 Cal.App.3d 444, 466 [280 Cal.Rptr. 175]; see also *People* v. *Burkett* (1991) 1 Cal.App.4th 971, 975 [2 Cal.Rptr.2d 330].)

■ We turn now to defendant's arguments asserting a prohibited dual use of facts. First, defendant contends the dual use of the prior conviction to enhance his sentence twice (once under section 4532, subdivision (b) and once under section 667, subdivision (e)(1)) is prohibited by *People* v. *Jones* (1993) 5 Cal.4th 1142 [22 Cal.Rptr.2d 753, 857 P.2d 1163] and *People* v. *Prather* (1990) 50 Cal.3d 428 [267 Cal.Rptr. 605, 787 P.2d 1012]. He argues this is true regardless of whether his prior conviction is considered an element of section 4532, subdivision (b), or a sentence-enhancing factor.

In 1982, the California Constitution was amended to add article I, section 28, subdivision (f), which provides a defendant's prior convictions should be used without limitation. In *Prather,* the court held this provision removed

section 667.5, subdivision (b) enhancements from the double-the-base-term limitation of section 1170.1, subdivision (g). (*People* v. *Prather, supra,* 50 Cal.3d at p. 439.) It rejected an argument that the constitutional provision did not apply because it spoke of prior convictions, while section 667.5, subdivision (b) was an enhancement for prior prison terms. The court rejected as "untenable" a "supertechnical" and "hypertechnical" reading that made a distinction between a prior conviction and a prior prison term. (50 Cal.3d at p. 439.)

In *Jones,* the court held a defendant could not receive an enhancement for both a prior conviction for a serious felony (§ 667, subd. (a)) and a prior prison term (§ 667.5) based on the same conviction. (*People* v. *Jones, supra,* 5 Cal.4th at p. 1152.) Following *Prather's* rejection of the "hypertechnical" and "supertechnical" distinction between prior convictions and prior prison terms, it found both enhancements applied to the same facts. (*Id.* at p. 1149.) The court then concluded the electorate could not have intended both enhancements to apply, but only the greater. (*Id.* at pp. 1150-1151.) The court reasoned that since most, if not all, serious felony convictions would result in a prison term, the five-year enhancements of section 667 would then become either six- or eight-year enhancements if section 667.5 enhancements also applied. If the voters had intended such longer enhancements, they would have so specified. (5 Cal.4th at p. 1150.)

Defendant argues that under *People* v. *Prather, supra,* 50 Cal.3d 428, and *People* v. *Jones, supra,* 5 Cal.4th 1142, a single prior conviction may not be used twice to enhance a sentence. Defendant's argument is premised upon his assertion that his prior conviction is being used to enhance his sentence. That premise is false. His prior conviction serves only to define his crime of escape and to subject him to an alternate sentencing scheme for recidivist offenders. Since there is no enhancement, the prohibition against a double enhancement based on a single prior conviction simply does not apply.

Moreover, the reasoning of *People* v. *Jones, supra,* 5 Cal.4th 1142, is not applicable to this case. The result in *Jones* was based on a determination of the lawmakers' intent. The court was concerned with the "peculiar" results of permitting enhancements under both section 667 and section 667.5 for the same prior conviction. The result would be an increase in the enhancement for a prior serious felony conviction from the five years provided in section 667 to six or eight years. The additional enhancement of section 667.5 would apply in almost every case where a defendant had a prior serious felony conviction because a serious felony conviction would almost always result in a prison term. (5 Cal.4th at p. 1150.) No such "peculiar" result occurs here; not every escapee will have his sentence increased under section 667,

subdivision (e). First, not everyone convicted under subdivision (b) of section 4532 will even have a prior conviction. Some will have only been arrested for or charged with a felony. (*People* v. *Jackson* (1979) 91 Cal.App.3d 767, 770 [154 Cal.Rptr. 372].) And even if the escapee has a prior conviction, it may not be for a serious or violent felony, so section 667 will not apply.

Next, defendant contends the rule of *People* v. *Edwards* (1976) 18 Cal.3d 796 [135 Cal.Rptr. 411, 557 P.2d 995] prohibits dual use of the prior to prove an element of the offense and to enhance the sentence. He argues nothing in section 667 reveals a legislative intent to abrogate the *Edwards* rule. Again, defendant's argument presupposes section 667, subdivision (e) is an enhancement. Since it is not, the rule of *Edwards* is inapposite. Moreover, this court has held the *Edwards* rule is no longer valid after the adoption of determinate sentencing. (*People* v. *Bruno* (1987) 191 Cal.App.3d 1102, 1106-1107 [237 Cal.Rptr. 31].)

■ Third, defendant contends section 654 bars use of the same prior conviction to impose multiple punishment. He fares no better with this argument. Section 654 provides in part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one. . . ."

The use of defendant's prior conviction does not fall within the prohibition of section 654 because it is not an "act or omission." Instead, it is defendant's status as a recidivist offender that brings section 667, subdivision (e) into play. Section 654 does not apply to a defendant's status. (*People* v. *Price* (1992) 4 Cal.App.4th 1272, 1277 [6 Cal.Rptr.2d 263]; *People* v. *Rodriguez* (1988) 206 Cal.App.3d 517, 519 [253 Cal.Rptr. 633].)

■ Finally, in his supplemental opening brief, defendant argues multiple use of his prior conviction violates the double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15 of the California Constitution. Retreating from his earlier characterization of section 667, subdivision (e) as an enhancement, defendant now contends the use of a prior conviction under section 667, subdivision (d) "becomes a component of the public offense charged." To determine if a defendant is being punished twice for the same offense, we look to both statutory provisions to see if each "requires proof of an additional fact which the other does not." (*Blockburger* v. *United States* (1932) 284 U.S. 299, 304 [76 L.Ed. 306, 309, 52 S.Ct. 180].) Defendant asserts there are two elements of the public offense component of section 667: (1) commission of a new felony;

and (2) previous conviction of a violent or serious felony. He argues escape in the factual context of this case requires the same two elements, so he is being punished twice for the same offense in violation of double jeopardy.

Even accepting for the sake of argument his dubious characterization of section 667 as defining an offense, defendant still fails to show a double jeopardy violation. One of the constitutional protections against double jeopardy is the protection "against multiple punishments for the same offense." (*North Carolina* v. *Pearce* (1969) 395 U.S. 711, 717 [23 L.Ed.2d 656, 665, 89 S.Ct. 2072].) This protection, however, does not mean a legislature cannot provide for cumulative punishment under two statutes. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does not [*sic*] more than prevent the sentencing court from prescribing greater punishment than the legislature intended." (*Missouri* v. *Hunter* (1983) 459 U.S. 359, 366 [74 L.Ed.2d 535, 542, 103 S.Ct. 673].) Thus, in *Hunter*, where the Missouri Legislature intended to punish the same act twice, as both "armed criminal action" and first degree robbery, there was no constitutional bar to the double punishment.

Subdivision (f)(1) of section 667 provides in part: "Notwithstanding any other law, subdivisions (b) to (i), inclusive, shall be applied in every case in which a defendant has a prior felony conviction as defined in subdivision (d)." This absolute language permits only the interpretation that the Legislature intended more severe punishment for recidivist felons, regardless of whether a prior conviction is a component of their current felony. Even if such punishment can be considered cumulative, it survives constitutional challenge due to the legislative authorization. (*Missouri* v. *Hunter*, *supra*, 459 U.S. 359, 368-369 [74 L.Ed.2d 535, 544].)

## VI. *Amended Complaint*

The initial criminal complaint charged defendant only with escape while charged with a felony. (§ 4532, subd. (b).) After defendant was arraigned on this complaint, the People filed an amended complaint, which added the allegation that defendant had a prior felony conviction within the meaning of section 667, subdivision (d).

At arraignment on the amended complaint, counsel for defendant began by stating defendant would plead guilty. Defendant understood he would receive twice the midterm and wanted to be sentenced that day. Defense counsel objected to the amendment and wanted defendant to plead to the original complaint. The court took defendant's plea to the amended complaint.

 Claiming a right to "plead to the sheet," defendant contends the court erred in refusing to accept his plea to the original complaint. He contends the prosecutor should not have been allowed to amend the complaint, an amendment that was necessary, he claims, only because of prosecutorial oversight. Defendant's contention has no merit.

An amended complaint may be filed, without leave of the court, at any time before a defendant enters a plea or a demurrer to the complaint is sustained. (§ 1009.) Thereafter, the court has discretion to permit an amendment. (*Ibid.*) Under section 969-1/2, the court may accept an amended complaint to add a prior felony conviction even after the defendant has entered a guilty plea. (*People* v. *Superior Court* (*Alvarado*) (1989) 207 Cal.App.3d 464, 476 [255 Cal.Rptr. 46].) The court acted well within its discretion in permitting the amendment. Defendant had notice of the amended complaint and was prepared to enter a plea to it. There was no error.

The judgment is affirmed.

Puglia, P. J., and Raye, J., concurred.

A petition for a rehearing was denied July 25, 1995, and appellant's petition for review by the Supreme Court was denied September 28, 1995. Mosk, J., Kennard, J., and Arabian, J., were of the opinion that the petition should be granted.