Filed 5/12/23  P. v. Gomez CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H050029 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. 21CR03701) |
| v. | |
| ANDRES TREJO GOMEZ, | |
| Defendant and Appellant. | |

Defendant Andres Trejo Gomez pleaded no contest to possession of a firearm by a felon and related charges and admitted a prior serious felony conviction.  At sentencing, the trial court denied Gomez's request to dismiss his strike prior pursuant to Penal Code section 1385[1] and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). The trial court sentenced Gomez to a total term of two years and eight months in prison.

On appeal, Gomez contends that the trial court erred when considering his *Romero* motion by failing to apply certain amendments to section 1385 enacted by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) (Senate Bill 81).

We disagree and affirm the judgment.

---

[1] Unspecified statutory references are to the Penal Code.

# I. FACTS AND PROCEDURAL BACKGROUND

## A. Facts[2]

On September 1, 2021,[3] Watsonville police officers initiated a traffic stop on a moving vehicle after observing it had no visible front license plate and had tinted front passenger windows. Gomez was seated in the front passenger seat. The driver and Gomez eventually exited the vehicle at the request of the officers and a police sergeant who had arrived on scene. Officers observed a firearm partially visible beneath the front passenger seat. The gun was loaded. Another firearm, registered to the driver, was located in the backseat inside of a backpack. Officers searched Gomez and found nine unspent bullets in his pocket, which matched the brand and caliber of both the gun beneath the front passenger seat and the gun registered to the driver.

## B. Procedural History

On October 13, following a preliminary hearing, the Santa Cruz County District Attorney filed an information charging Gomez with possession of a firearm by a felon (§ 29800, subd. (a)(1); count 1), carrying a loaded firearm in public (§ 25850, subd. (a); count 2), carrying a concealed handgun in a vehicle (§ 25400, subd. (a)(1); count 3), and possession of ammunition by a person prohibited from possessing a firearm (§ 30305, subd. (a)(1); count 4). In addition, the information alleged that Gomez had suffered a prior serious and/or violent felony conviction for attempted robbery (§§ 664, 211) in 2015 in Monterey County. (§§ 667.5, subds. (b)–(i) (strike allegation or strike prior).)

In January 2022, after the trial court denied Gomez's motion to suppress evidence pursuant to section 1538.5, the trial court gave a tentative indicated sentence of 32 months in state prison (based on the low term of 16 months on count 1, doubled by the

---

[2] The factual summary is taken from the September 30, 2021 preliminary hearing. The parties stipulated to the preliminary hearing transcript as the factual basis for the plea.

[3] Unless otherwise indicated, all dates were in 2021.

strike prior), with the opportunity to file a *Romero* motion at sentencing. Gomez pleaded no contest to all four counts and admitted the prior strike allegation pursuant to section 667, subdivisions (b)–(i). The court accepted Gomez's plea and admission of the strike prior.

Prior to sentencing, defense counsel filed a *Romero* motion asking the trial court to dismiss Gomez's strike prior in furtherance of justice based on multiple considerations, including the nature and age of the strike prior, Gomez's good performance on parole, and his willingness to undergo counseling for possible PTSD. In support of his motion, Gomez cited the additional language of section 1385, subdivision (c) (hereafter, section 1385(c)), requiring that certain factors be " 'afforded great weight' " in favor of dismissal. Gomez noted that he had reported to the interviewing probation officer "that he may suffer from PTSD as a result of being a crime victim in the past," and furthermore asserted that the strike offense was more than five years old, had occurred when he was a teenager, and was "a different type of offense" than the current offense, which involved possession of a firearm that was "not exhibited" and "certainly wasn't discharged." The district attorney opposed the *Romero* motion, arguing it would not be in the interests of justice to strike Gomez's strike allegation based on his conviction history and performance on supervision since his release from incarceration in late 2018.

At the sentencing hearing in May 2022, the trial court indicated it would deny the *Romero* motion and explained its reasons on the record, noting there was not a clear connection between the mental health issue raised by Gomez and the current offense and concluding that the other relevant factors did not justify dismissal of the strike. Over the objection of the district attorney, who requested a four-year prison sentence, the trial court sentenced Gomez in accordance with the court's indicated sentence to an aggregate term of two years, eight months in prison. The sentence comprised the low term of 16 months for count 1, doubled pursuant to section 667, subdivisions (b)–(i), 16 months for counts 2 and 3, stayed pursuant to section 654, and a concurrent term of 16 months for

count 4, doubled due to the strike prior. The court awarded custody credits and imposed fines and fees.

Gomez timely appealed.

## II. DISCUSSION

Gomez contends the trial court abused its discretion in declining to strike his prior strike conviction by failing to apply the amendments set forth in section 1385(c). He argues that section 1385(c), enacted by Senate Bill 81, applies to strike priors and requires the trial court to " 'afford great weight' " to evidence of certain enumerated mitigating circumstances, unless the result would endanger public safety. Gomez maintains the court in this case abused its discretion by failing to consider three of the four factors present using the presumptions specified by section 1385(c).

Section 1385, subdivision (a), authorizes trial courts to dismiss an action "in furtherance of justice." (§ 1385, subd. (a).) In *Romero*, the California Supreme Court held that a trial court's discretion under section 1385, subdivision (a) includes the power to dismiss a prior conviction alleged under the Three Strikes law. (*Romero*, *supra*, 13 Cal.4th at pp. 529–530.) Section 1385, subdivision (a) allows a court to "strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony." (*People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*).)

Section 1385, subdivision (b), pertains to enhancements. It states, "If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a)." (§ 1385, subd. (b)(1).)

Effective January 1, 2022, Senate Bill 81 amended section 1385 to add subdivision (c), also pertaining to enhancements. (Stats. 2021, ch. 721, § 1.) The newly added subdivision lists specific mitigating factors a court must consider when deciding whether to strike an enhancement from a defendant's sentence in the interest of justice.

4

(§ 1385(c); *People v. Sek* (2022) 74 Cal.App.5th 657, 674; *People v. Burke* (2023) 89 Cal.App.5th 237, 242–243 (*Burke*).)  Additional amendments to section 1385(c), effective June 30, 2022, make minor changes not at issue here.  (Stats. 2022, ch. 58, § 15.)

We review de novo, as a matter of statutory interpretation, whether the amendments to section 1385 enacted by Senate Bill 81 apply to prior strike convictions. (*Burke*, *supra*, 89 Cal.App.5th at p. 242.)

As amended, section 1385(c) states:  "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.  [¶]  (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the [enumerated] mitigating circumstances . . . are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  The mitigating circumstances in section 1385, subd. (c)(2) are listed in subparagraphs (A) to (I).[4]

---

[4] Section 1385, subd. (c)(2) lists the following mitigating circumstances: "(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of [s]ection 745.  [¶]  (B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.  [¶]  (C) The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed.  [¶]  (D) The current offense is connected to mental illness.  [¶]  (E) The current offense is connected to prior victimization or childhood trauma.  [¶]  (F) The current offense is not a violent felony as defined in subdivision (c) of [s]ection 667.5.  [¶] (G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case.  [¶]  (H) The enhancement is

Gomez asserts that the enumerated circumstances at issue in this case, and noted in his *Romero* motion, are whether the current offense is connected to a mental illness (§ 1385, subd. (c)(2)(D)), or to prior victimization or childhood trauma (*id*., subd. (c)(2)(E)), whether the current offense is a violent felony (*id*., subd. (c)(2)(F)), and whether the enhancement is based on a prior conviction that is over five years old (*id*., subd. (c)(2)(H)).

Gomez argues that because the California Supreme Court in *Romero* held that section 1385 authorizes courts to strike prior felony convictions alleged under the Three Strikes law, any amendments to section 1385—unless otherwise indicated—likewise apply to strike priors. Since Senate Bill 81 amended section 1385, Gomez contends that section 1385(c) should be construed as applying to strike allegations, notwithstanding the amended statute's use of the word " 'enhancement.' "

Gomez acknowledges case law holding that the Three Strikes regime is not an "enhancement" but an alternative sentencing scheme. (See *People v. Sipe* (1995) 36 Cal.App.4th 468, 487; *People v. Williams* (2014) 227 Cal.App.4th 733 (*Williams II*).) However, he argues that because "enhancement" as used specifically in section 1385 has not been judicially construed and is not defined in the relevant statutory amendments, it may be understood according to its ordinary meaning. (See *Romero*, *supra*, 13 Cal.4th at p. 527 [noting the technical definition of "enhancement" but declining "to answer all of these arguments"]; *De Vries v. Regents of University of California* (2016) 6 Cal.App.5th 574, 590–591 [" 'When a term goes undefined in a statute, we give the term its ordinary meaning.' "].)

Referencing *Black's Law Dictionary* (11th ed. 2019), Gomez suggests that " 'enhancement' " refers simply to an allegation that increases the punishment for an

___

based on a prior conviction that is over five years old.  [¶]  (I) Though a firearm was used in the current offense, it was inoperable or unloaded."

6

offense beyond that authorized for the offense alone.[5]  As such, he maintains that

"elevating" or "doubling" enhancements under the Three Strikes law are increases in

punishment subject to the changes made by Senate Bill 81.  Gomez argues that as a

matter of statutory interpretation, a term should be given its ordinary meaning unless such

an interpretation would defeat the statute's purpose or raise constitutional questions.

Gomez contends that in this case, applying the new subdivision (c) to the trial court's

*Romero* determination is consistent with the statutory purpose because Senate Bill 81

addresses systemic disparities in sentencing, including those engendered by the Three

Strikes law.  He contends that attempting to reduce such disparities by enabling the

dismissal of penalty provisions raises no constitutional concerns.

We join other Courts of Appeal in rejecting this reading of section 1385(c).

In *Burke*, *supra*, 89 Cal.App.5th 237, the Third District Court of Appeal looked to

the statutory language as the primary indication of legislative intent.  (*Id*. at p. 243; see

*People v. Coronado* (1995) 12 Cal.4th 145, 151.)  It noted that "[s]ubdivision (c) of

section 1385 expressly applies to the dismissal of an 'enhancement.'  (§ 1385, subd.

(c)(1).)" (*Burke*, at p. 243.)  The court considered both the "well-established technical

meaning [of 'enhancement'] in California law" (*ibid.*) as well as case authority

concluding that the Three Strikes law is not an enhancement but "an alternative

sentencing scheme for the current offense" (*ibid*.).  The court reasoned that since words

in a statute " 'are presumed to be used in accordance with their established legal or

technical meaning' " (*ibid*.), and it is "well established that the Three Strikes law is not an

_____

[5] According to *Black's Law Dictionary* (11th ed. 2019), "enhancement" means: "1. The act of augmenting, as with a sentence in a criminal prosecution or damages in a civil action; the quality, state, or condition of being enhanced.  [¶]  2. Criminal procedure. An upward adjustment to a defendant's offense level under applicable sentencing guidelines <the use of a deadly weapon led to an enhancement of the sentence>."  The same source defines "sentence enhancement" as "[t]he increase of a criminal defendant's punishment based [] on a prior conviction."

enhancement" (*ibid*.), section 1385(c) does not apply to the Three Strikes law. (*Id*. at p. 244.)

We agree. Case law uniformly recognizes use of the term "enhancement" in the sentencing context to mean " ' "an additional term of imprisonment added to the base term." ' " (*Burke*, *supra*, 89 Cal.App.5th at p. 243, quoting *People v. Jefferson* (1999) 21 Cal.4th 86, 101; *People v. Tirado* (2022) 12 Cal.5th 688, 695, fn. 9; see also Cal. Rules of Court, rule 4.405(5).) Conversely, courts agree that "[t]he Three Strikes law is a penalty provision, not an enhancement. It is not an enhancement because it does not add an additional term of imprisonment to the base term. Instead, it provides for an alternate sentence . . . when it is proven that the defendant has suffered . . . prior serious [or violent] felony convictions." (*Williams II*, *supra*, 227 Cal.App.4th at p. 744; *Burke*, *supra*, 89 Cal.App.5th at p. 243; see *Romero*, *supra*, 13 Cal.4th at p. 527.) Given the uniform construction of these terms by courts, we are not persuaded by Gomez's argument that "enhancement" within the specific context of section 1385 has not been judicially construed. We "presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law." (*Burke*, at p. 243; see also *People v. Weidert* (1985) 39 Cal.3d 836, 845–846 [reiterating that a statute's use of a term that has been judicially construed is presumed to be consistent with " ' "the precise and technical sense which had been placed upon [the term] by the courts" ' "].)

Gomez acknowledges these points but argues that interpreting section 1385(c) narrowly, to restrict its application to technical "enhancements," is contrary to the Legislature's intent as well as the rule of lenity. The rule of lenity, which "generally requires that 'ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation' " (*In re M.M.* (2012) 54 Cal.4th 530, 545), applies when " ' "two reasonable interpretations of

8

the statute stand in relative equipoise" ' " (*ibid*.). That is not the case here, where Gomez's proposed construction of the term (to encompass strike priors) would be inconsistent with prior, uniform judicial construction of the word "enhancement."

Gomez also points to the legislative history of Senate Bill 81, including Senate and Assembly Floor Analyses, which he contends support his interpretation of section 1385(c). As we perceive no ambiguity in the wording of section 1385(c), we need not resort to legislative history to construe its meaning. (See *People v. Arias* (2008) 45 Cal.4th 169, 177; *Burke*, *supra*, 89 Cal.App.5th at p. 243.)

We decide that section 1385(c)'s use of the term "enhancement" does not extend to strike priors under the Three Strikes law. As Gomez's sole contention on appeal is that the trial court erred in failing to apply section 1385(c), we affirm the judgment.

### III. DISPOSITION

The judgment is affirmed.

_____
Danner, Acting P.J.

WE CONCUR:

_____
Wilson, J.

_____
Bromberg, J.

**H050029**
*People v. Gomez*